will turn to the first case, which is Will Isnady v. Village of Walden and others. Counsel, you may begin. Thank you, Your Honor. May it please the Court, Barry Haberman for the appellant. The witness action was brought by the appellant seeking, based upon his alleged violations of civil rights pursuant to 42 U.S.C. Sec. 1983 by the Village of Walden. Before the Court reached the merits of the case, the Court dismissed the action holding that the plaintiff was barred from bringing the action because he did not properly list the cause of action on his petition of bankruptcy. Just to bring the Court up to date, the appellant has moved in bankruptcy court to reopen his case. That case is 15-35042. I know there was a hearing yesterday. I'm unaware of the result of that hearing as to whether or not the Court had granted that application. I am aware that the appellees have opposed that application, but there has not yet been a decision posted on the websites, nor have they been able to reach Bankruptcy Counsel for the appellant. Excuse me. This is Judge Carney with a question. Am I right that the bankruptcy proceedings closed the estate in 2018 at the end of May, so close to two years ago? Yes, that's correct. They did petition to reopen it back in, I believe, January of this year. We all agree, I think, that this claim was not listed in writing pending on the assets of Mr. Iznati. Is that right? That's correct, but I just wanted to point out one thing to the Court. At the time, the form that was used, Schedule B, did not explicitly make clear how it should be listed. He did list at the time on his statement of financial assets that the way it was structured at that time, where the form was done based upon April 2013, it asked for all suits and administrative proceedings, which the debtor is or was a party to within one year immediately preceding the filing of the bankruptcy case. That form has since, and the answer to that question, honestly, if there was a previous case that was brought by the Village of Walden versus the appellant, that form has since been revised to reflect more accurately whether the cases are, whether you actually have a case pending or contemplated. So the forms technically were filled out correctly, but he did not list the claim explicitly on the forms as a pending litigation. There was no litigation for it at that time. But it was a claim that was an asset, ultimately, is what the District Court found, correct? That's correct. That's correct, Your Honor. And that was not listed, yeah. And in seeking to reopen the bankruptcy proceeding, is he seeking to have the estate pursue the claim as he's kind of forfeited standing at this point, I think? What relief is he seeking at this point? He's seeking to reopen the case so he can maintain the cause of action. But he filed as a Chapter 13 debtor, and I believe this court has found in previous times in two cases. One is Beckford v. Bayview Loan Servicing, case 17-2865, 2nd Circuit, 2018, that a debtor who files a Chapter 13 bankruptcy may litigate causes of action that belong to the estate. And there are also cites to another case that was decided by this court, Olick v. Parker v. Parsley, 145F 3rd 513, 2nd Circuit, 1998. Counsel, are these cases in your brief? I do not believe that they are, Your Honor. Then you should put these cases in the form of a 28-J letter, send it to the clerk's office, and we'll each get a copy. On another front, this is Judge Jacobs. The district court dismissed, both on the ground of judicial estoppel and on the ground of standing, your brief addresses a judicial estoppel, and it really doesn't mention standing. What is your standing if the asset is not owned by your client, but is owned by the estate? Well, assuming that he would prevail at trial, ultimately, the creditors that are listed in the bankruptcy petition would be able to be paid off, and there would be substantial assets left over that would flow to the debtor. But he's not trying to sue on behalf of the estate. He's trying to sue in his own name. This is Judge Pooler, by the way. Yes. How would the creditors have any part of it?  If he's suing in his own name, what access would the creditors have to any award of damages that he achieves? Well, he's seeking to reopen his case. He would have to satisfy those creditors in some fashion. He cannot benefit himself at the expense of his creditors. That's not permitted. So he would have to pay off his creditors in order to be able to reap any benefits that flow to him directly. But under the principle that a debtor who falls under Chapter 13 has standing to bring an action in his own name outside of the estate, he should be able to pursue his causes of action. Counsel, Mr. Iznati says he was advised by his attorney that he didn't have to list these causes of action. Were you that attorney? No, I was not that attorney, Your Honor. Following up on that, on the notion, you suggested that the form misled Mr. Iznati as well as what Judge Pooler is referring to as advice of counsel. And yet, the district court dismissed the complaint on these grounds in July of 2019. And presumably, they were raised well before that when the motion to dismiss was filed. So to the extent there was a misunderstanding, there was cause to reexamine this again probably a year ago. And yet, when are you saying that the motion to reopen the bankruptcy proceedings was filed? That motion to reopen was not filed until, I believe, I believe it was January 2020. Excuse me, that was December 3, 2019. So relatively recently, which seems somewhat inconsistent with the notion that there was a misunderstanding based on the form and advice of counsel. I know that the debtor, Pelland, obtained new bankruptcy counsel to be able to pursue it. I am not sure as to why his previous bankruptcy counsel did not wish to, you know, file the application to reopen up the case. Counsel, you've retained three minutes for rebuttal. Yes.  Good morning, your honors. May it please the court. My name is Mary Marzola. I'm from the law firm of Farrick Nugent McCartney. We represent the Village Defendant. Thank you, your honors, first and foremost, for accommodating all the parties in these challenging times and hearing our arguments. We respectfully submit to Judge Roman's decision dismissing the complaint was correct in all respects and well within his discretion. As plaintiff notes in their brief, the standard of review is abuse of discretion in here. The court had not just plaintiff's self-serving, uncorroborated affidavit that, you know, he didn't do anything wrong here, but it had a timeline, a timeline of public records, which amply showed that the debtor had full knowledge of these claims dating back to 2001, 2013, well before his filing for bankruptcy in 2015, throughout the entire bankruptcy proceedings until after, until today. And as your honors noted, he only moved to amend, to open that case, that bankruptcy case to amend his schedule in January of this year. And he did so... Ms. Marzola? Yes, your honor. This is Judge McCartney. Yes, your honor. God, could I ask you, just as a factual matter, do you contest that Mr. Esnadi disclosed the 1983 claim at the 341 meeting? That's an oral disclosure? We absolutely do. And the reason we do, your honor, is because as Mr. Haberman invited this court to go beyond the record and go into the bankruptcy court proceedings, we invite the court to do that as well. Because in opposition to the debtor's motion to reopen, the trustee's attorney filed an affirmation in opposition in January stating it was never disclosed. And then following that, in March of this month, a few weeks ago, the debtor filed an affidavit in the bankruptcy court, abandoning the claim that he ever told anyone and contradicting his affidavit to Judge Roman. Thank you. That's in the bankruptcy court record, and so that's potentially something in which we could take judicial notice. Is that right? Yes, your honors. Does the village object to the reopening of the bankruptcy? We do to the extent that it seeks to solely because he's doing it to come after the village in this format, in this form. And the village was also a creditor, you know, so the village was a creditor. And, you know, in this case, unlike the case of Ashmore or the case of Clark, which Plaintiffs does cite in their briefs, you know, there's no support here from the trustee. There's no indication that disclosure of what he calls assets, these claims against the village, would have had any – would not have impacted the 341 hearing or the creditor's position. You know, here we believe it would have. And not only that, he's assuming these cases are assets. We had a second portion to our motion to dismiss, which was that – a 12B6 one, that he doesn't state a claim plausibly for a variety of reasons. So even if the estoppel and the standing on the bankruptcy issues were not sufficient to dismiss the claim, which we believe they are, there's a 12B6 motion that requires dismissal as well and renders this case not an asset. It's unfortunate that the village has had to defend itself in a state court action, in this action, and now in bankruptcy court, simply because this gentleman did not disclose these claims in the bankruptcy court. It would have all been resolved in the bankruptcy court and either dismissed in the bankruptcy court had he done so at the time. Ms. Marzullo, it's Judge Carney again. Could I ask, if the bankruptcy proceedings were to be reopened, do you know how the attorney's fees related to pursuing such a claim would be paid? Did they come out of – I mean, the estate's already been distributed and closed. I'm not really clear how that would happen. Would it just be contingent potentially on any recovery? Or maybe this is a question better directed to Mr. Haberman. I'm not sure what you mean by the attorney's fees. Is it our attorney's fees, the plaintiff's? To the extent that this is an asset, that the claim is an asset of the estate and whose value would only be realized after some subsequent litigation, either by settlement or by a judgment, the attorneys would need to be paid to pursue the claim. Correct? That's correct. I believe that would be an arrangement between Mr. Haberman and his client, which I'm not privy. Yes, yeah. But the estate – it's a potential charge against the estate as well as potential recovery, I assume. I believe it would be a charge against – yeah, absolutely, Your Honor. I do agree with that. Okay, thank you. So I don't have anything further. If Your Honors have any questions, I'm happy to try to answer them. No questions. Thank you. Thank you. Thank you, Your Honors. Thank you. We turn to Mr. Haberman, who reserves three minutes for rebuttal. Yes, Your Honor. Thank you. I just wanted to go over with some of the factors that relate to the proceeding on the Eshmore. Actually, let me inquire for just a minute. This is Judge Kearney. Mr. Haberman, could you answer my question that I had just posed to your adversary about how the claim would be pursued if there were a grant of the motion to reopen in the bankruptcy court? How would attorney's fees be covered if there were, for example, no recovery ultimately? If there was no recovery?  Right. But if the claim – that would be less than the applicable attorney's fees, I assume. Correct. Correct. And so if there were no recovery, if it were unsuccessful ultimately, the prosecuting lawyer would just go unpaid. Is that right? If the arrangement with the debtor is on the contingency basis, that would be correct, Your Honor. But if it's on an hourly basis, I'd have to make a fee application to the bankruptcy court to be retained with some agreement for the bankruptcy court to oversee. So up to the trustee to arrange somehow. Well, whoever is representing him – if it was myself representing him in litigation, I'd have to make an application for bankruptcy court to be retained pursuant to a representation agreement and then be paid going forward as bankruptcy court would determine. Okay. Thank you. With the fee application. Excuse me. But as the bankruptcy court would determine, what would those payments come out of? What fund is there to pay counsel? Well, I'm not sure. You know, Mr. Esnadi is currently working and would have funds from either his business or however he's earning fees. I mean, he would have to – I'm not sure where he earns his monies from, but he would have to make a representation, be able to acquire funds to be able to pay the attorney. Got it. Thank you. I just wanted to make reference under one of the things that were mentioned by Kelly's counsel. As far as filing a claim, the village never filed a claim against the debtor in bankruptcy court. We put into our proposed supplemental papers the claims registry for the particular case, and there were only five – excuse me, there were four claims that were filed, and the village was not one of them. Two of the claims were by attorneys and other claims related to an education loan and the mortgage on the property itself. And that mortgage was reaffirmed because he's still making those payments on that property. Under Ashmore, which this court decided, lists several factors that relate to this case, advancement of inconsistent factual positions, adoption, unfair advantage, detriment, and impact on judicial integrity. And it is our position that under the standard of Ashmore, looking to be able to provide equity in this matter, there should be a finding that he's able to proceed further on his case. He did put forth – Mr. Haberman? Mr. Haberman, this is Judge Carney again. Yes. I have a question following up on an assertion made by an attorney for the village of Walden, which was that in subsequent filings in the bankruptcy court, your client has submitted an affidavit that acknowledges that he did not make an oral disclosure of the claim in the 341 meeting. Is that correct? I saw that representation. I'm not 100% certain that that was the actual representation that he made. I am aware that there's been some inconsistencies in the affidavits, and I am aware that it's been alleged by the trustee that they're not necessarily sure that it was discussed at the 341 hearing. I am aware from many conversations that I've had with my client and many proceedings that he's been involved with with this case that it's hardly unfathomable to me that he could go through a meeting without discussing this case. But let me just – I'm just really focused on the subsequently submitted affidavit in connection with the recent proceedings, whether you know whether he acknowledges that at that 341 meeting there was no oral disclosure. And I guess you're saying you don't know. Is that right? I don't know. I don't know, Your Honor. Okay. Thank you. But whatever – that affidavit, I certainly can submit to the court or it can be obtained for the court to review, along with the other information the court requested of me earlier. I just – it's our position that he did not obtain any unfair advantage or detriment and that he did not play – that there's limited impact on judicial integrity. He filled out the forms, which he believed was correct. He's been trying to pursue this case against the village for a while. The village is well aware when the village answered the case in the New York action, the village never made any claim that the case was barred by bankruptcy or any other proceeding. One can certainly argue that they've waived the right to raise it at this time. One issue is standing, and I'm not sure they can waive standing. It's jurisdictional. Indeed, we have a duty to consider it, even if the other side does not. Okay. I wasn't sure if there was a question there, Your Honor. Yes, I'm just – I'm observing that the fact that the other side hasn't acted upon it or hasn't invoked it – I'm not sure they may have – doesn't necessarily preclude us from considering it. No, I'm just raising the issue that in the prior action that was filed in state court, they never raised the affirmative defense of either lack of standing or that the case was barred by a petition of bankruptcy. Your time has expired, counsel. Thank you. Thank you, Your Honor. A reserved decision. Thank you both to counsel.